United States v. Pabon. Good morning and may it please the court. I'm Randall Unger. I represent Christian Pabon on this appeal. I submit that the defendant was not proven guilty of murder in aid of racketeering or racketeering conspiracy because the so-called 200 gang was really not an enterprise. I acknowledge that the definition of the term enterprise is a broad one but there are certain requirements that need to be satisfied to establish its existence. Enterprise will generally have some sort of a structure even if it's an informal structure. There should be relationships among the members of the enterprise other than merely social relationships. Now the cooperating witnesses who pled guilty to being part of this enterprise and explained to the jury they had two headquarters in upper Manhattan. They had hand signs. Your client was one there was the shooter for the gang. They had access to guns and then they they detailed particular crimes that they committed together. So what's missing? I would say your big point was that they also belong to other gangs but well that can't be that that's a therefore if you belong to more than one gang then you're not there's no enterprise that can't be. I agree and it's not dispositive but I think it is relevant to the question of question of whether an enterprise has been shown. I mean there are a number of factors and on balance those factors weigh against the establishment of an enterprise in this case. I'm sorry they had a hierarchy, they had a title, certain people had authority to admit members, kick them out, they had defined territories, they had a headquarter, they had a requirement for membership, they had a handshake, they had No I'm being facetious of course. What I'm suggesting is there are still a number of factors that weigh against an enterprise in this case. Now what about also the fact that they committed crimes together and on behalf of whatever this entity is? Well my essential point in this case is that yes there were a number of crimes committed by individuals who associated with each other. They knew each other many of them since childhood. They grew up together in the same neighborhood. That doesn't show enterprise. What shows that no rational trier of fact could have reached the same conclusion the jury did? Even if you say that it's not correct, if somehow you were to explain to us it needs to have A, B, or C, what is the basis for arguing that no rational trier of fact could have reached the same conclusion the jury did? Well at the risk of incurring Judge Bianco's response or further... I'll keep quiet. No I invited but it was brought up that yes they all of these people seem to be members of multiple gangs. The defendant at one point I think it was that he wasn't just a member of the 200 gang, he was a member of something called the sex money murder gang. I love the name. How does that show that it's not an enterprise just because somebody has more than one membership? Because you reach a point where it seems and I believe that some of the members quote-unquote members of the 200 gang were members of actually gangs that were rivals to the 200 gang. You had... Well you can't have rivals if you're not an enterprise. I'm not sure that cuts... I'm not sure that's helpful but I would say I mean I don't these are not gangs I've heard of but in the in the big gang so when we deal with prison cases we have someone who's a crip and someone who's a blood you can't cross over like there are they don't hang out they can't be in the same block right so if there are true enterprises we often see a complete bar on these people interacting so that was really that's the theory I saw from your perspective. How would it be a real enterprise if they were allowed to continue in their other gangs? You've articulated it better than I have. But you're telling me now that they have rivals which makes me think oh well. I understand the argument sort of circles around on itself but I mean here we have you know there's supposed to be loyalty if you're a member of a gang you're loyal to the gang and to the bosses of the gang. I mean we've seen enough Martin Scorsese movies so that we know when the members... Those were very well organized gangs. That's not the kind of gangs we see. Well I understand but what we've seen those scenes where the members have just committed a big crime and they bring stacks of money to the boss who had no involvement in the crime whatsoever didn't commit it didn't participate in any way he just started the gang or the enterprise. We have nothing like that in this case. You have basically the so called members of this gang committing crimes at random on an ad-hoc basis and most of the time spur of the moment types of things. Just going back to Judge Perez's point, that's why we have juries. These arguments are the types of things that juries can resolve and Judge Miriam's point as well. If they're involved in more than one gang, if there's something about those gangs or their relations that makes it irrational to think that this 202 was functioning as some unit with a common objective and I don't know if those arguments were made to the jury here but we have to find that they could not rationally conclude that even though they were members of different gangs that this was a unit that committed crimes together or agreed to commit crimes together at least. Yes your honor and to respond I didn't try the case but my recollection is that trial counsel did make these arguments to the jury they just didn't buy them. And look yes the jury concluded that the government had proven the case beyond a reasonable doubt but jurors sometimes get it wrong. You have 45 seconds do you want to cover the... Yes and I think in addition the second point that the defendant was denied his right to a fair trial. The introduction of the evidence of a state court firearm conviction, arrest and conviction was unduly prejudicial. It should have been excluded. In some ways the evidence in that case was more damaging to the defendant than all of the testimony provided by the cooperating witnesses. I mean after all they had heinous backgrounds, had committed the most horrible crimes. Why shouldn't the government be allowed to corroborate their testimony that cooperated and said he was the gun guy for the gang and during that time frame of the indictment he's in the neighborhood I think it's the same area right? Right it was. Alright so why can't they corroborate because I'm sure the defense would stand up and say they're saying he's the gun guy but they don't have any evidence that he's the gun guy right? Well that really wasn't the evidence and the government... Why isn't that evidence that if they say yeah he's the gun guy and he was found with a gun in that area during the time frame they said he was our gun guy. I understand and the government's argument in support of this evidence was well this shows that he has access to guns. Well the fact is that the defense never resisted that claim. It was never any defense that poor Mr. Verbonne has no knowledge about firearms and how could he possibly have been the shooter if he doesn't know where to get guns. I mean that just wasn't the defense in this case. So the government was introducing evidence that was not necessary, that was prejudicial, unduly prejudicial and that was more compelling I would submit than all of the other testimony that they introduced at this trial because it came from police officers. Not from cooperating witnesses whose lives were on the line and had bargained with the government for their freedom in some cases. In exchange for the most horrendous crimes, shootings, stabbings, using a hot iron on a victim, waterboarding, despicable stuff. This was official police evidence where the officers apparently had no ax to grind, nothing to gain or lose by their testimony or the stipulation of their testimony, much more damaging. Thank you. We'll hear from the government, Ms. Espinosa. Good morning, your honors. May it please the court. I am Elizabeth Espinosa. I represent the United States on this appeal as I did in the trial in the district court below. Here the district court correctly found that there was sufficient evidence for the jury to find Pabon guilty of racketeering conspiracy and murder in aid of racketeering. And the jury verdict should be upheld. Now Pabon here completely fails to meet the very heavy burden on a defendant challenging the sufficiency of the evidence. As your honors have already pointed out, the verdict must be upheld if any rational trier of fact could have found the essential elements beyond a reasonable doubt. And here there is more than sufficient evidence that the 200s constituted an enterprise, an association in fact enterprise, and that Pabon was a member of that enterprise. What would you say is the common purpose of the 200? Your honors, the record at trial showed the common purpose of the 200 was to control the Dyckman neighborhood in order to make money by selling drugs and committing robberies together. And they defended that territory with acts of violence against rivals who either disrespected members of the 200 or encroached on that territory. Mr. Unger didn't mention it here, but in his brief he points out that some of the other cases that one of the features is sharing of proceeds. I know you mentioned this in the brief. Do you want to address that? Yes, briefly, your honor. I think that there is no rule and this court has never found that sharing profits is an essential element in order to find an enterprise. And there was some testimony at trial from Castillo in particular, one of the cooperators, that on occasion he sent money to the commissary accounts of other 200 members in jail. But that was not a primary feature of this enterprise, but it's not necessary that it was. There were a lot more elements that make very clear that the 200 was in fact an association, in fact enterprise. There was, as your honors have already pointed out, titles, hierarchy, defined roles, requirements for entry, headquarters, hand signs, defined territory. And all of that makes clear here that the 200 was in fact an enterprise, even though they perhaps did not share profits as much as some other enterprises may have done. So is this a new development that a couple of members of this gang and a couple of members of that gang are all getting together? I mean, as I said, as I mentioned to your colleague, this sort of flies in the face of what we've traditionally heard about and what, frankly, government experts have testified at trials about how gangs behave, right, that they are very exclusive. This strikes me as a very different type of enterprise. And so as Judge Bianco alluded to earlier, that's the piece where I worry that I could see a rational jury rejecting this. Does that not fly in the face of your experience? This somehow seems rational that there is an actual organized gang, but its members are at the same time members of other actual organized gangs? Yes, your honor. That is in fact what the evidence showed in this particular case. As the cooperators made clear, the 200 was a neighborhood gang made up of young men who grew up in that area and joined together in order to advance the purpose of the 200. It was quite common that they were also members of national gangs. As Raymond Castillo testified, Pabon was a member of Sex Money Murder, which is a set of the Bloods, which is a national gang. Other members were members of the Trinitarios, which is another national gang, but they joined together in this neighborhood-based crew. And the 200 took precedence over their loyalty to the national gang. Was there testimony that those gangs were rival gangs, though, or no? There is no evidence in the record to support my colleague's argument that Sex Money Murder was a rival of the 200. All right. Now, unless your honors have more questions on this point, I will move to the second point on the evidentiary issue. Now, here the district court correctly admitted evidence of Pabon's 2015 gun possession as direct evidence of the charged racketeering conspiracy. Judge Feinstein correctly found that Pabon's arrest with a loaded 9mm firearm in gang territory during the period of the charged conspiracy was inextricably intertwined with the charged offense and was therefore not other crimes evidence under 404B. And Judge Stein was well within his discretion to so rule, and the argument should also be rejected here. Unless your honors have additional questions, we'll rest on our submission. On the 403 part of that, they argued that it was the same type of gun, that ballistics from the murder, 9mm, and that there could have been confusion that the government was suggesting that that was the murder weapon. What's your response to that? Your Honor, I don't think that it would have been reasonable for the jury to draw that conclusion. The government did not argue that that firearm that was recovered was the gun used in the murder. There was no suggestion that it was. The government made clear in its closing argument that this 9mm firearm that Pabon was found with in 200 territory corroborated the allegations and the charges that he was the gun guy for the gang, that Castillo saw Pabon on a particular occasion with a 9mm firearm, that Lopez saw Pabon bring a firearm to a robbery they attempted to carry out together. And so this was clearly direct evidence of him being the gun guy in the gang, and there was absolutely no suggestion at any point that it was the murder weapon. You heard him say today they didn't dispute that he had access to guns, and that therefore on the 403 that should alter the analysis. Well, Your Honor, this court has never found that it is enough to merely passively not dispute something to take it out of play in a trial. He also did not concede that he had access to a gun. There was no stipulation that Pabon had access to firearms or was familiar with firearms, so that's respectfully not sufficient to withdraw the issue from consideration. All right. Thank you. Thank you. Mr. Unger, you have three minutes in rebuttal. Thank you, Your Honor. As far as the firearm point, the admission of the state court arrest and conviction evidence, the government has indicated that it was proper and the evidence was not mishandled in any way, and it reminded me as well that during the summation to the jury, counsel to the government referred back to that very evidence as proof that the government had proven the case beyond a reasonable doubt against the defendant. So the evidence was used, I would submit exploited, and that exacerbated the damage caused by the original introduction of that evidence. Now, I agree that it is not a prerequisite to establishing an enterprise that there be sharing of proceeds. I agree that it's not dispositive, but it is highly relevant as to whether or not this is truly an enterprise, because it would seem to me if you're in a gang and loyalty is everything within the gang, you go and commit a crime, you come back and you split up the proceeds of the crime with the other participants in that crime, that doesn't sound to me like a real gang. I think a real gang, you're talking about taking those proceeds, divvying it up among the participants, and then going to other members of the gang and saying, here's your cut. Even though you didn't help us in any way, you're one of us. Here's your split as well. That doesn't happen with this 200 gang. It never did. And I think Your Honor indicated that this doesn't seem to be a typical gang or a typical enterprise. It's because it isn't, I would submit. Thank you. Thank you both for a reserved decision. Have a good day.